## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID J. CUSHING,

          Plaintiff

against

STUDENT LOAN MARKETING
ASSOCIATION, AS TRUSTEE FOR THE
SLM STUDENT LOAN TRUST 2003-3;
NATIONAL ENTERPRISE SYSTEMS;
NAVIENT, INC.

          Defendants

**Case No. 16-595**

**PLAINTIFF'S REQUEST FOR JUDICIAL
NOTICE**

**TO DEFENDANTS AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure Rule 201,

Plaintiff David J. Cushing, (hereinafter referred as "Plaintiff"), hereby requests that the Court take

judicial notice of the following facts.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: . .

. can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. Rules Evid. 201(b)(2). "The court: . . . must take judicial notice if a party requests

it and the court is supplied with the necessary information." Fed. Rules Evid. 201(c)(2).

A court may take judicial notice of its own records in other cases, as well as records of an

inferior court in other cases. *U.S. v. Wilson*, 631 F.2d 118 (1980). The court can take judicial notice

of documents recorded with county recorder's offices. *See Velazquez v. GMAC Mortg. Corp.*, 605

F. Supp.2d 1049 (2008). A court may take judicial notice of the existence of matters of public

record, such as a prior order or decision. *Marsh v. San Diego County,* 432 F.Supp.2d 1035 (2006).

A district court would take judicial notice of records of two earlier, related actions in same district for purpose of establishing facts leading up to present action, and would take judicial notice of two orders entered in pending bankruptcy proceedings in order to recognize judicial acts taken and subject matter of that litigation. *Enterprise Bank v. Magna Bank of Missouri*, 894 F. Supp. 1337, 1341 (1995), affirmed 92 F.3d 743.

Based upon the foregoing authorities, Plaintiff respectfully requests that this Court take judicial notice of the following documents and facts:

1. A U.S. Department of Education Internal Review Report as to the named Defendants in this action, which ultimately resulted in the termination of Defendants in 2015 as identified "debt collectors"

Respectfully submitted this 2ND day of August, 2016

David J. Cushing, Plaintiff Pro Se
4201 Neshaminy Blvd., Suite 10821
Bensalem, PA 19020-1609

2



PROUD SPONSOR *of*
*the* AMERICAN MIND™

Prepared for:
**U.S. Department of Education**
**Federal Student Aid**
**Business Operations**

Entity Reviewed:
**Navient Corporation**
**220 Lasley Avenue**
**Wilkes-Barre, PA 18706**

Prepared by:
**U.S. Department of Education**
**Federal Student Aid**
**Financial Institution Oversight Service – Eastern Division**

# Internal Review Report

May 26, 2015

## TABLE OF CONTENTS

Page

A. Review Information .......................................................................................................2

B. Entity Information .......................................................................................................2

C. Review Objectives.......................................................................................................4

D. Purpose and Scope of Review.....................................................................................4

E. Summary of Element Reviewed ..................................................................................5

    Element: Servicemember Civil Relief Act ..............................................................5

    Issue 1 – Incorrectly Granted the SCRA Interest Rate Cap .....................................6

    Issue 2 – Denial of SCRA Interest Rate Cap Despite a Valid Request ....................7

    Issue 3 – Incorrect Active Duty Military Service Dates Used for SCRA Interest Rate Cap Periods and Interest Rate Not Always Adjusted Back to the Original Rate .............................7

F. Conclusion ..................................................................................................................8

## A. Review Information

**SID Number:** 700578

**Program Review Control Number (PRCN):** 20152025099

**Name and Address:**
Navient Corporation
220 Lasley Avenue
Wilkes-Barre, PA 18706

**Dates of Review:** January 20, 2015 through January 30, 2015

**Review Period:** June 19, 2009 through May 31, 2014

## B. Entity Information

Navient Corporation, formerly known as Sallie Mae[1], signed a contract on June 17, 2009, to be a Title IV Additional Servicer (TIVAS) contractor with the U.S. Department of Education (Department) to service Federal Family Education Loan (FFEL) Program loans purchased by the Department from FFEL Program lenders under the Ensuring Continued Access to Student Loans Act of 2008 (ECASLA). Although the Loan Purchase Commitment Program expired September 30, 2010, the Asset-Backed Commercial Paper Conduit Put Program allowed FFEL Program lenders to sell loans to the Department until January 19, 2014. In 2010, the TIVAS contract was extended to include servicing of the William D. Ford Direct Loan (Direct Loan) Program, as well as FFEL Program loans owned by the Department. The FFEL and Direct Loan programs are authorized by Title IV of the Higher Education Act of 1965, as amended (HEA).

## Background

On May 13, 2014, the Department of Justice (DOJ) announced a settlement agreement with Navient and Sallie Mae Bank that addressed violations of the Servicemembers Civil Relief Act (SCRA) on federal and private student loans serviced by the companies. In connection with the announcement of the settlement agreement, the Secretary of Education announced that Federal Student Aid (FSA) would review the Department's servicers' compliance with the SCRA. This report presents the results of FSA's review of Navient's compliance with the SCRA for federally-held FFEL Program and Direct Loan Program loans it serviced under the TIVAS contract.

The SCRA provides a wide range of protections for individuals entering or called to active duty in the military or servicemembers already deployed. In regard to FFEL loans and Direct Loans, the SCRA limits the interest rate a borrower may be charged on a loan made to the servicemember entering qualifying military service to six percent. When the servicemember

---

[1] Navient was not created until May 2104. Some of the events discussed in this report were performed by Sallie Mae but, to avoid confusion, this report will use the name Navient to refer to the company acting as TIVAS contractor, whether those actions occurred before or after Navient was created.

ends a period of active duty military service, the interest rate should return to the original rate. The six percent interest rate applies during any period when the borrower is on active duty military service.

The SCRA's interest rate limit first became applicable to the FFEL and Direct Loan programs with the passage of the August 14, 2008, Higher Education Opportunity Act (HEOA) which amended §§428(d) and 438 of the HEA to incorporate the SCRA's interest rate limitation.

The Department's Dear Colleague Letter (DCL) GEN-08-12/FP-08-10 issued December 2008 included guidance to FFEL loan holders regarding the application of the SCRA for FFEL Program and Direct Loan Program loans.[2] Page 120 of the DCL noted that the interest rate limitation applies to borrowers in active duty military service as of August 14, 2008, but did not apply to an endorser of a PLUS loan unless the endorser is also performing eligible active duty military service. The DCL also stated that:

> …Under the SCRA, the borrower must contact the creditor (loan holder) in writing to request the interest rate adjustment and provide a copy of the borrower's military orders. For this purpose, the term "in writing" may include a borrower's email request and the term "copy of the borrowers' military orders" includes a scanned copy of the orders attached to that email request.… The Department will apply the SCRA interest rate limit to Direct Loan borrowers in the same manner.

On October 29, 2009, the Department published final regulations in the Federal Register that included changes to implement the SCRA interest rate cap. The regulations became effective July 1, 2010. The final regulations added 34 CFR §682.202(a)(8) which provides:

> The charges that lenders may impose on borrowers, either directly or indirectly are limited to the following:
>
> (a) *Interest.* The applicable interest rates for FFEL Program loans are given in paragraphs (a)(1) through (a)(4) and (a)(8) of this section.
>
> (8) *Applicability of the Servicemembers Civil Relief Act (50 U.S.C 527, App. sec. 207).* Notwithstanding paragraphs (a)(1) through (a)(4) of this section, effective August 14, 2008, upon the loan holder's receipt of the borrower's written request and a copy of the borrower's military orders, the maximum interest rate, as defined in 50 U.S.C. 527, App. section 207(d), on FFEL Program loans made prior to the borrower entering active duty status is 6 percent while the borrower is on active duty military service.

---

[2] Section C.1.4.3 (Constraints) of Navient's TIVAS contract states that "[t]he contractor(s) will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur." The Department's DCL system provides FSA program direction and compliance guidance.

The final regulations also changed the Direct Loan Program regulations at 34 CFR §685.202(a)(4), to similarly provide:

> (4) *Applicability of the Servicemembers Civil Relief Act (50 U.S.C. 527, App. sec. 207).* Notwithstanding paragraphs (a)(1) through (3) of this section, effective August 14, 2008, upon the Secretary's receipt of a borrower's written request and a copy of the borrower's military orders, the maximum interest rate, as defined in 50 U.S.C. 527, App. section 207(d), on Direct Loan Program loans made prior to the borrower entering active duty status is 6 percent while the borrower is on active duty military service.

On December 12, 2013, FSA issued Change Request (CR) 2278 which states that "FSA needs to ensure that active duty personnel are receiving the active duty student loan benefits they are entitled to receive." This CR instructs all of FSA's servicers to "…do a match with the Department of Defense (DoD) database to identify active duty military personnel for purposes of applying active duty military benefits to eligible loan recipients." On April 7, 2014, FSA issued CR 2409 which states that the "[t]he servicers shall outreach to all eligible active duty personnel identified in the DoD match (per CR 2278) and ongoing annually….The servicers should track the results of this outreach activity and report to FSA any problems or successes with this effort." On May 19, 2014, CR 2658 instructed the TIVAS to use the Defense Manpower Data Collection (DMDC) database to "…replace the requirement for the receipt of orders…as long as the servicer notifies the service member that the benefit is being applied and provides the service member an opportunity to request additional information." Navient has implemented CR 2658 which is expected to address issues identified in this report.

## C. Review Objectives

The objective of this review was to determine whether eligible borrowers of eligible FFEL loans and Direct Loans received the benefit of the 6 percent interest rate cap provided by the SCRA in accordance with applicable statutes and the Department's regulations and guidance.

## D. Purpose and Scope of Review

The purpose of this review was to:

(1) Determine whether Navient complied with all Departmental statutes, regulations, and guidance in determining whether a borrower was eligible to receive the interest rate cap provided by the SCRA, and

(2) Ensure that eligible borrowers who met the requirements for the interest rate cap under the SCRA were granted the benefit on all their eligible federal student loans.

Financial Institution Oversight Service (FIOS) conducted a program review at Navient from January 20, 2015 through January 30, 2015. The review covered the period June 17, 2009, (the effective date of Navient's TIVAS contract) through May 31, 2014. The review was limited to loans owned by the Department and serviced by Navient under the TIVAS contract. The review

did not cover whether Navient applied the SCRA interest rate cap correctly on FFEL loans it held and loans it serviced for other holders or private student loans.

## E. Summary of Element Reviewed

Loans serviced by Navient as a TIVAS, with an interest rate in excess of 6 percent for the period June 17, 2009 through November 2014, were extracted from the National Student Loan Data System (NSLDS) and matched against the DMDC database. This match generated a population of 112,190 loans made to 54,410 borrowers. These matched records were provided to Ernst &Young (EY), who selected a statistically valid random sample of 300 unique borrowers and an additional 100 borrowers for substitutions if needed. After adjusting for borrowers who only had active duty or notification of active duty start dates (reservists or National Guard members) that began after May 31, 2014, the borrower population was determined to be 52,848 borrowers. EY then eliminated seven borrowers who had not been in active duty status prior to June 1, 2014, and replaced them from the substitute population. The updated random sample of 300 unique borrowers with a total of 755 FFEL and DL loans was used by FIOS to conduct the program review.

## Element: Servicemember Civil Relief Act

Borrowers in active duty military service may receive a benefit under the SCRA which limits interest rates charged on FFEL Program and Direct Loan Program loans to 6 percent. Under the Department's regulations, to receive the benefit of the interest rate cap under the SCRA during the period covered by the review[3], the borrower must have provided the servicer with a written request for the benefit and a copy of the appropriate military orders. These documents may be provided in paper form or by email. In some cases, the borrower's power of attorney may also present these documents on behalf of the borrower. The servicer must grant the benefit based on the military orders provided and may use information obtained through the DMDC system to augment the information in the request.

## Methodology:

FIOS interviewed key Navient officials responsible for servicing loans under the TIVAS contract, including the Senior Director of Compliance & Audit Support, Senior Director of the Office of the Customer Advocate, Director of CollegeServ, Manager of Military Processing, and Business Technical Coordinator – Military Processing. FIOS reviewed Navient's processes and procedures to ensure that they adhered to the requirements in the HEOA and the Department's regulations, and other guidance in regard to SCRA. To determine active duty military service dates and SCRA eligibility, data from NSLDS, Navient's internal system, and borrower records were reviewed and any inconsistencies were reconciled. For all loans in the sample, copies of monetary transaction histories, collection activity histories, and deferment histories were also reviewed.

---

[3] Since the period covered by the review, the Department has been working with Navient to change the process for ensuring that eligible borrowers receive the benefit of the interest rate cap under the SCRA.

All samples were tested to determine whether Navient:
- Notified the borrower that they may be eligible for the SCRA interest rate cap,
- Granted the SCRA interest rate cap when the borrower requested the benefit in writing and submitted a copy of their military orders, and applied the interest rate cap to all eligible loans, both FFEL Program and Direct Loan Program loans,
- Denied the SCRA interest rate cap in accordance with the Department guidelines,
- Granted the interest rate cap for the correct time period for borrowers approved for the SCRA interest rate cap, and
- Adjusted the SCRA interest rate cap back to the original interest rate if the borrower left active duty military service or was otherwise found to be ineligible for the SCRA interest rate cap.

**Results:**

For the 300 borrowers tested:
- Navient notified 52 borrowers of their potential eligibility. Notifying the borrower of their potential SCRA eligibility was not required during the period covered by the review.
- 23 borrowers requested the SCRA interest rate cap:
  - Navient granted the SCRA interest rate cap to 16 borrowers:
    - Navient correctly granted the benefit to 10 borrowers.
    - Navient incorrectly granted the benefit to 6 borrowers.
  - Navient denied the SCRA interest rate cap to 7 borrowers:
    - Navient correctly denied the benefit to 6 borrowers
    - Navient incorrectly denied the benefit to 1 borrower.
  - Navient used incorrect active duty military service dates to determine the benefit period for 4 of the 16 borrowers granted the benefit.
  - Navient correctly adjusted the interest rate cap back to the original interest rate for 6 of the 16 borrowers granted the benefit.

*There were three issues identified.*

FIOS found that Navient did not fully comply with all Department statutes, regulations, and guidance for granting the interest rate cap provided by the SCRA to eligible servicemembers. Specifically, Navient incorrectly approved the SCRA interest rate cap for six borrowers, denied SCRA interest rate cap for one eligible borrower despite the borrower's valid request, used incorrect active duty military service dates in granting SCRA benefits to four borrowers, and did not always adjust the interest rate cap back to the original interest rate when the borrower was no longer eligible.

**Issue 1 – Incorrectly Granted the SCRA Interest Rate Cap**

Navient incorrectly granted the interest rate cap under the SCRA to six borrowers.

Navient incorrectly granted SCRA benefits to three borrowers who did not submit the required military orders to support the borrowers' active duty military service dates. In two cases the

borrowers submitted enlistment documents in lieu of military orders and in the third case no orders were submitted.

Navient incorrectly granted SCRA benefits to two borrowers who did not submit a written request for the SCRA benefit. In one case Navient accepted the borrower's military deferment as a form of a written request for the SCRA benefit and in the second case Navient applied the SCRA from the borrower's private loan to the borrower's federal loans without the borrower submitting a written request for either the private or federal loan.

Navient granted SCRA benefits to a sixth borrower for a loan made after the beginning of the borrower's active duty military service.

**Recommendations:**

We recommend that Business Operations direct Navient to—

1.1   Review the portfolio of borrowers granted the SCRA interest rate cap to ensure that only eligible borrowers were approved for the benefit and adjust borrower accounts or allow benefits already provided to borrowers, as appropriate.

1.2   Comply with all Department requirements and seek assistance in the implementation of new regulatory requirements.

**Issue 2 – Denial of SCRA Interest Rate Cap Despite a Valid Request**

Navient incorrectly denied the SCRA interest rate cap to one eligible borrower.

One borrower submitted a written request for the SCRA benefit along with a copy of his military orders. However, Navient denied the SCRA request because the typed letter was not formally signed. As a result, the borrower was improperly denied the interest rate cap that he was eligible to receive.

**Recommendations:**

We recommend that Business Operations direct Navient to—

2.1   Retroactively grant the SCRA interest rate cap to the eligible borrower and adjust the borrower's account accordingly.

2.2   Develop and implement a control to prevent future processing errors of this nature.

**Issue 3 – Incorrect Active Duty Military Service Dates Used for SCRA Interest Rate Cap Periods and Interest Rate Not Always Adjusted Back to the Original Rate**

Navient used incorrect active duty military service end dates to determine the SCRA interest rate cap benefit period for four borrowers. Additionally, Navient did not always appropriately adjust

the interest rate back to the original rate when there was a change in a borrower's eligibility status.

Navient failed to adjust the end date of the SCRA benefit period for four borrowers although the end dates were documented in the files resulting in an extension of the benefits by several months for each borrower. In cases where the active duty military date was incorrectly extended or the benefit should have been reversed because it was subsequently determined the borrower was ineligible, Navient periodically confirmed the SCRA interest rate cap eligibility, but it did not properly adjust eligibility dates or the eligibility determination based on available information. When it obtained the updated information, Navient did not retroactively apply adjustments to the actual end date of the borrower's active duty military service, but rather used the date the updated information was obtained. Navient also did not reverse the benefit for borrowers who were subsequently found to be ineligible. Navient's practice did not include retroactive adjustments or reversal of SCRA eligibility because this would negatively impact the borrowers. As a result, four borrowers who qualified for the 6 percent interest rate under the SCRA had improperly processed SCRA benefits due to incorrect end dates used for the borrowers' active duty military service. Additionally, the interest rate for borrowers with a change in eligibility status was not always changed back to the original interest rate.

**Recommendations:**

FIOS recommends that Business Operations direct Navient to—

3.1    Review the portfolio of borrowers who received SCRA benefits to ensure that: 1) correct begin and end dates are used for determining the eligible benefit period and 2.) the interest rate is accurately adjusted back to the original rate for borrowers who had a change in eligibility status and adjust borrower accounts or allow the benefits already provided to borrowers, as appropriate.

3.2    Comply with all Department requirements regarding the use of correct active duty service dates.

**F. Conclusion**

The program review identified the following issues:

- Navient incorrectly granted SCRA benefits to borrowers who did not submit a written request or military orders and for a borrower whose loan was made after the beginning of the borrower's active duty military service.

- A valid SCRA interest rate cap request was denied due to a Navient error in interpreting the written request requirement.

- Incorrect active duty military service end dates were used to apply the interest rate cap under the SCRA. The interest rate for borrowers with a change in eligibility status was not always changed back to the original interest rate.

August 2, 2016

David Cushing
4201 Neshaminy Blvd., Suite #10821
Bensalem, PA 19020

**FILED**

AUG 0 8 2016

Office of the Clerk
United States District Court
Eastern District of Pennsylvania
601 Market Street, Room 2609
Philadelphia, PA 19106

**LUCY V. CHIN, Interim Clerk**
**By _____ Dep. Clerk**

**INDEX NUMBER 16-0595 David J. Cushing v. Student Loan Marketing Association**

To Whom It May Concern:

Please file the attached first amended complaint to the above referenced case.

Thank you for your attention to this matter.

Sincerely,

David Cushing
Pro-Se Litigant

Thomas M. Brodowski
Stradley Ronon Stevens & Young, LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400